UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KRISTA GREEN,<br><br>                Plaintiff,<br><br>v.<br><br>W. L. GORE & ASSOCIATES, INC., A Delaware Corporation, registered to do business in Idaho, and JOHN DOES 1–100,<br><br>                Defendants. | Case No. 4:19-cv-00022-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant W.L. Gore & Associates, Inc.'s ("Gore") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") (Dkt. 35); Gore's Motion to Seal Exhibit 1 to Plaintiff's Objection to Defendant's Motion to Dismiss Plaintiff's FAC (Dkt. 42); and Plaintiff Krista Green's Motion for Extension of Time to File Objection to Defendant's Motion to Dismiss (Dkt. 40). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court GRANTS Gore's Motion to Dismiss, GRANTS Gore's Motion to Seal, and DISMISSES as MOOT Green's Motion for Extension of Time.

MEMORANDUM DECISION AND ORDER-1

## II. BACKGROUND[1]

On January 22, 2019, Green filed her Complaint against Gore. Green alleged three separate causes of action: (1) "strict liability;" (2) "strict products liability: failure to warn;" and (3) "negligence." *Id.* at 4–7. Green sought at least ten million dollars in damages for each cause of action. On September 3, 2019, Gore filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).

Oral argument was held on March 2, 2020. Neither Green nor any individual representing Green was present at the scheduled time for oral argument. Though the Court's docket indicates that Green received notice of the hearing (Dkt. 26), there is a possibility that Green did not receive any notice. The Court treated Green's absence as a waiver of her oral argument and allowed her to move forward on her briefing alone.

On April 3, 2020, the Court dismissed Green's initial Complaint but granted leave to amend. Dkt. 31. Green filed her FAC on May 4, 2020.

On May 18, 2020, Gore filed the pending motion to dismiss. Dkt. 35. On June 24, Green filed the pending motion for extension of time. Dkt. 40. On June 25, 2020, Gore filed the pending motion to seal. Dkt. 42.

## III. DISCUSSION

### A. Motion for Extension of Time (Dkt. 40)

On June 19, 2020, the Court ordered Green to file her response to Gore's second

---

[1] The facts in this section come from the docket and prior Court orders or from Plaintiff's First Amended Complaint, (Dkt. 35), which are accepted as true for the purposes of this motion, *see Wilson v. Lynch*, 835 F.3d 1083, 1092 (9th Cir. 2016).

motion to dismiss by June 29, 2020. Dkt. 38. On June 24, 2020, Green moved the Court "for an extension of time to extend the due date for her responses (objections) from Monday June 8, 2020 until Friday June 12, 2020." Dkt. 40, at 1. Because the Court had already extended Green's deadline to respond beyond the date requested in her Motion, the Motion for Extension of Time is MOOT and therefore DENIED.

**B. Motion to Dismiss (Dkt. 35)**

1. *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

MEMORANDUM DECISION AND ORDER-3

In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122. In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

2. Discussion

Green alleges the same three separate causes of action in her FAC that she raised in her original complaint: (1) "strict liability" (broken into two sub claims: defective design and defective manufacturing); (2) "strict products liability: failure to warn;" and (3) negligence. Dkt. 35, at 7–12. Green seeks at least ten million dollars in damages for each of her three cause of action.

Gore moves to dismiss Green's FAC because Green has again failed to "set forth facts that establish any failure on the part of Gore, product defect, or proximate causation for any theory of product liability she alleges." Dkt. 35-1, at 2. Gore argues that Green's FAC is insufficient under the heightened *Iqbal* and *Twombly* standards for pleading under Rule 8.

    a. <u>Strict Liability Claims</u>

As the Court previously stated, "there are three general categories of strict liability in product liability cases—manufacturing flaws, design defects, or failure to warn." *Wilson v. Amneal Pharm., L.L.C.*, 2013 WL 6909930, at *7 (D. Idaho Dec. 31, 2013) (citing *Toner*

*v. Lederle Labs.*, 732 P.2d 297, 306 (Idaho 1987)). To establish a case for strict liability based on any of the three available theories, "a plaintiff must establish that (1) the product in question was defective, (2) the defect existed at the time the product left the manufacturer's control, and (3) that the defective product was the proximate cause of the plaintiff's injuries." *Puckett v. Oakfabco, Inc.*, 979 P.2d 1174, 1179 (Idaho 1998). "Regardless of the theory under which recovery is sought in a products liability action, a plaintiff must establish that the injury is causally related to defendant's act or omission." *Watson v. Navistar Int'l Transp. Corp.*, 827 P.2d 656, 674 (Idaho 1992).

It was unclear under which strict liability theory Green relied upon in her original complaint. However, the Court ultimately dismissed Green's strict liability claim as inadequate because "there is no identification or description in the Complaint of the alleged defect," and "Green does not allege how the supposed defect caused any of the pain or other damages *she* suffered." Dkt. 31, at 18. "As it currently reads, the Complaint suggest that the Mesh is a potential cause of the injuries but stops short of the plausibility line." *Id*. at 18. The Court held that Green's Complaint "needs more factual support to clear the hurdle set by Rule 8." *Id*.

      i. Strict Liability Claim: Defective Design

Green now alleges that after the Gore-Tex DualMesh product was surgically implanted to repair Green's incisional hernia on September 11, 2006, she experienced chronic abdominal pain, infections, adhesions, and fissures. Dkt. 32, ¶¶ 27–33. Green further alleges that on November 30, 2017, Green received a CT scan of her abdomen and pelvis. In addition to the Gore-Tex DualMesh, the CT scan showed some irregularities,

MEMORANDUM DECISION AND ORDER-5

such as a "ventral bulg[e]" and a "lobulated right renal lesion." *Id.* at ¶ 34.

Green alleges that on January 30, 2018, she was diagnosed with a "recurrent right lower quadrant incisional hernia with mesh and partial small bowel obstruction symptoms, and "adhesions to the viscera as well as the abdominal wall involving the mesh at the right lower quadrant involving the small bowel and large bowel." *Id.* at ¶¶ 35–36. The same day, the "well incorporated" Gore-Tex DualMesh was surgically removed from Green. *Id.* at ¶ 36. Green concludes the "defective and unreasonably dangerous condition of the DualMesh product was the proximate cause of the damages and injuries to Plaintiff set for herein." *Id.* at ¶ 49.[2]

Green has further amended her complaint to allege that there was a design defect in Gore-Tex DualMesh because it was:

(a) not designed to remain in the human body indefinitely;
(b) not designed to remain in place and not migrate;
(c) designed in such a way that could cause infection;
(d) designed in such a way that the mesh could grow into patient's skin, causing scar tissues or blockages; [and]
(e) designed in such a way as to allow an undue risk of complications set forth in paragraphs 21, 24–25 herein.

Dkt. 32, ¶ 45. Green next alleges, without providing further details, that "[s]afer alternative designs were available at the time of sale." Dkt. 32, ¶ 46.

Gore argues that Green:

> . . . offers no explanation of any properties or characteristics of the Gore Mesh that would induce or amplify the risk of migration, and/or infection and/or scarring, and she offers no alternative design that would eliminate

---

[2] In the FAC, Green alternatively refers to the Gore-Tex DualMesh as "Mesh," "DualMesh," "Gore-Tex DualMesh," and "the Product." *See generally*, Dkt. 32. For consistency, the Court uses the term "Gore-Tex DualMesh."

MEMORANDUM DECISION AND ORDER-6

> such risks. At best, Plaintiff has taken known complications of mesh surgery, or any implant surgery for that matter, and worked backward to then label the Gore Mesh defective because these known risks are possible.

Dkt. 35-1, at 7. In her very brief response, Green states (without providing any sources) that "studies have shown that ePTFE is more susceptible to infection than other biomaterials" and "ePTFE meshes are susceptible to shrinkage and erosion." Dkt. 41, at 3. In its reply, Gore argues that Green conceded all arguments due to her cursory response. Dkt. 43, at 4–5 (citing *Morgan v. Kalaco Sci.*, 2008 U.S. Dist. LEXIS 139769, at *5 (D. Ariz. Mar. 4, 2008) ("Generally, where a party fails to respond to a non-frivolous legal argument raised by opposing counsel in a dispositive motion, that argument is deemed conceded.")

While Green's response to Gore's argument was brief, she did respond. Therefore, the Court finds Green has not conceded her design defect claim.

Under a theory of design defect, the design of the product is at issue. The product must be designed "so as to eliminate unreasonable risks of foreseeable injuries." *Puckett*, 979 P.2d at 1179 (citing *Zimmerman v. Volkswagen of America, Inc.*, 920 P.2d 67, 70 (Idaho 1996)). Similarly, a product is defective when it exposes a user or bystander to an unreasonable risk of physical injury. *Id.* A plaintiff may prove a design defect by presenting evidence of feasible alternative designs, available to the manufacturer, that would have lessened the risk associated with the product. *Nepanuseno v. Hansen*, 104 P.3d 984, 988 (Idaho Ct. App. 2004).

It is not necessary for the plaintiff at the Complaint stage to *prove* what feasible alternative designs were available to the defendant; that is what discovery is for. *See OSU*

MEMORANDUM DECISION AND ORDER-7

*Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) ("But where the claim is plausible—meaning something more than "a sheer possibility," but less than a probability—the plaintiff's failure to prove the case on the pleadings does not warrant dismissal.").

However, the plaintiff must plausibly allege the three elements of strict liability to survive a motion to dismiss. Here, Green's FAC plausibly alleges a design defect and that the defect existed at the time the product left the manufacturer's control. Yet, Green has not plausibly alleged that the design defect was the proximate cause of her injuries. It remains unclear to the Court, on the face of the FAC, *how* the supposed defect caused any of the pain or other damages *Green* suffered. As the Court previously noted, it not enough to "allow[] the court to draw the reasonable inference that [Gore] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As the relationship between the defect and harm she is alleging is unclear, the Court finds Green has inadequately alleged the Gore-Tex DualMesh was the proximate cause of her injuries. The Court accordingly dismisses Green's design defect claim without prejudice.

      ii.  Strict Liability Claim: Manufacturing

In her FAC, Green alleges that the product "*may* have been manufactured defectively due to having deviated materially from Defendant's design specifications." Dkt. 32, ¶ 51. Gore argues that this claim is insufficient because Green does not allege how Gore failed to meet manufacturing specifications and performance standards. Green did not respond to this contention. Consequently, Gore contends Green conceded the issue. Dkt. 43, at 5 (citing *Morgan*, 2008 U.S. Dist. LEXIS 139769, at *5).

MEMORANDUM DECISION AND ORDER-8

A party's failure to respond may be grounds to dismiss a claim. *Strolberg v. Akal Sec., Inc.*, No. CV 03-0004-S-DOC, 2003 WL 27384361, at *2 (D. Idaho Aug. 12, 2003) (dismissing without prejudice a wrongful termination claim when the plaintiff did not respond to defendants' arguments regarding sovereign immunity); *Papasan v. Dometic Corp.*, 2017 WL 4865602, at *18 (N.D. Cal. Oct. 27, 2017) (collecting cases standing for proposition that a party who fails to respond to an argument raised in motion to dismiss concedes the argument). Here, due to Green's lack of response, the Court dismisses Gore's strict liability manufacturing defect claim without prejudice.[3]

### iii. Strict Liability Claim: Failure to Warn

"Under the theory of negligent failure to warn, a 'product is defective if the defendant has reason to anticipate that danger may result from a particular use of his product and fails to give adequate warnings of such danger.'" *Liberty Nw. Ins. Co. v. Spudnik Equip. Co., LLC*, 316 P.3d 646, 650 (Idaho 2013) (quoting *Puckett v. Oakfabco, Inc.*, 979 P.2d 1174, 1181 (1999)) (internal citations omitted). A duty to warn exists "only where the manufacturer knows or has reason to know the unsafe condition of the product when used for the purpose for which it was supplied." *Sliman v. Aluminum Co. of Am.*, 731 P.2d 1267, 1270 (Idaho 1986) (internal quotation marks and citation omitted). Further, the manufacturer "is not absolved of its duty to warn if the product might prove unsafe only to a few, foreseeable users." *Id.* "Even though a product is not inherently defective in design

---

[3] Even if Green had responded, the Court agrees that Green's manufacturing claim is insufficient because it merely alleges a sheer possibility; it does not rise to the level of plausibility.

or manufacture, the supplier's duty to warn extends to risks of danger which arise during the known or foreseeable use of the product." *Id.* A failure to warn allegation may be barebones. *See Massey v. Conagra Foods, Inc.*, 328 P.3d 456, 464 (Idaho 2014) ("Because a failure to warn claim is a specific type of products liability action, the inclusion of certain language such as: '[ConAgra] failed to ensure that its cooking instructions would, if followed by the consumer, kill Salmonella and other pathogens' under a general 'Products Liability' heading is sufficient for ConAgra to infer that a failure to warn claim was being alleged. And, importantly, ConAgra did make that inference.")

The Court previously dismissed Green's strict liability failure to warn claim, holding Green had "fail[ed] to identify exactly how Gore failed to warn consumers, or how Gore's failure to warn caused her injuries," and her allegations were conclusory. Dkt. 31, at 18–19. "Instead, Green simply states that there were 'inadequate warning and/or [in]adequate clinical trials, in vivo and in vitro testing and study, and inadequate reporting regarding the results' without identifying any information concerning the warnings, trials, testing, studies, and reports, either concerning what was done or what should have been done." *Id*. (quoting Dkt. 2, at 6).

In the FAC, Green alleges that Gore failed to warn physicians and/or consumers "to the dangerous risks associated with the product, including, without limitation, those risks outlined in paragraphs 21, 24–25 above and other injuries and complications that the Defendant was aware of at the time that the Gore-Tex product was implanted into the Plaintiff." Dkt. 32, ¶ 56. In paragraph 21, Green alleges that Gore knew that "hernia meshes made of ePTFE resulted in high rates of infections, adhesions to underlying organs, early

mesh failure and hernia recurrence." She also alleges that Gore knew or should have known about a variety of other medical complications such as intestinal fistulas, adhesion, bowel obstruction, mesh migration, mesh shrinkage, etc. *Id*. at ¶¶ 24–25.

Gore acknowledges Green's failure to warn claim "is substantially different in her FAC than in her initial Complaint," however Gore argues it is still insufficient. Dkt. 35-1, at 9. Specifically, Gore suggests the "FAC still fails to allege the specific danger Gore failed to warn about and purportedly omitted by Gore in its detailed Instructions for Use ("IFU") or otherwise, [and] fails to connect such dangers to Plaintiff's alleged injuries." *Id*. Further, the FAC does not allege how such warning would have altered Green's or her medical provider's behaviors. Finally, Gore states that "Plaintiff alleges *both* that the risks for which Gore should have warned were 'known risks' and that her providers 'did not have substantially the same knowledge [of these 'known risks'] that an adequate warning from [Defendant] would have communicated.'" *Id*. at 10 (quoting Dkt. 32, at ¶ 24, ¶ 59). Green failed to respond to Gore's argument.

Green's amended complaint may have been sufficient under Rule 8.[4] However, by failing to respond to Gore's argument, Gore implicitly conceded it. The Court accordingly dismisses Green's failure to warn claim without prejudice.

---

[4] The Court notes that while Green's FAC addresses many of the Court's prior concerns, it still does not identify information concerning what warnings *were* given or what was omitted from said warnings. In other words, Green fails to identify what, if any, use instructions were provided and how following such instructions would lead to specific harm. *See Massey*, 328 P.3d at 464.

MEMORANDUM DECISION AND ORDER-11

b. Negligence Claim

A negligence claim involving product liability requires a plaintiff to meet the same elements as a strict product liability claim; that is "1) . . . she was injured by the product, 2) the injury was the result of a defective or unsafe product, and 3) that a defect existed when the product left the control of the manufacturer." *Watson*, 827 P.2d at 674. A manufacturer "can appropriately be held liable [in a negligence suit] for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm." *Clark v. Int'l Harvester Co.*, 581 P.2d 784, 792 (Idaho 1978) (internal quotation and citations omitted).

The Court previously found Green's negligence claim insufficient, as Green "relie[d] solely on the fact that the Mesh and the injury occurred at the same site during the relevant timeframe to support her claim" and "fail[ed] to allege how or why the Mesh was defective or how the Mesh caused her injuries." Dkt. 31, at 20.

Green alleges Gore was "negligent in designing, manufacturing, formulating warnings for and selling" the Gore-Tex DualMesh. Dkt. 32, ¶ 70. She relies on her prior strict liability claims to establish the negligence claim.

Gore identifies a series of deficiencies in Green's negligence claim as alleged in the FAC. First, Green fails to identify any industry or manufacturing standard that allegedly applied. Second, Green fails to allege a specific way Gore deviated from the standard of care in its design, manufacturing or labeling. Third, Gore fails to allege how any such deviation (by act or omission) led to a defect, fails to identify what that defect consisted of, and fails to explain how such defect caused Gore's conditions. While Gore did not cite to

caselaw to support its contention that Green's failure to identify the appropriate standard of care in her FAC means it should not survive, Green did not respond to Gore's arguments that her negligence claim was insufficient.

Green concedes her negligence claim is insufficient to withstand dismissal by failing to respond to Gore's arguments. Even if she had not conceded it, Green did not sufficiently allege how the defect caused her medical condition. The Court accordingly dismisses Green's negligence claim without prejudice.

### c. Leave to Amend

Leave to amend pleadings shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). Courts apply Rule 15 with extreme liberality. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave to amend, the court generally considers five factors: (1) undue delay; (2) bad faith; (3) futility of amendment; (4) prejudice to the opposing party; and (5) whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted). These factors are not weighted equally: futility of amendment alone can justify the denial of a motion to amend. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).

Here, amendment would not be futile. If Green wishes to amend her complaint to include her now dismissed claims, she must submit an amended complaint within 30 days of the date of this decision.

### C. Motion to Seal (Dkt. 42)

Green mailed her response to Gore's motion to dismiss—as well as its attached

MEMORANDUM DECISION AND ORDER-13

exhibits—to Gore prior to filing them with the Court. On June 24, 2020, when Green filed her response with the Court, she did not attach her exhibits. Dkt. 41. However, as Gore was on notice as to the exhibits Green *intended* to file with her response, Gore preemptively filed a motion to seal Exhibit 1 of Green's response to Gore's Motion to Dismiss on June 25, 2020. Dkt. 42. On June 26, 2020, Gore filed Exhibit 1, a draft settlement agreement between parties and joint stipulation for dismissal, with the Court. Dkt. 44.

Gore moves to seal Exhibit 1 on the grounds that the document was exchanged as part of negotiations pursuant to Federal Rule of Evidence 408 and is not relevant to the motion to dismiss. Further, it argues that Gore's interests in preserving the confidentiality of Exhibit 1 outweighs any public interest in disclosure of the document.

Green opposes sealing the draft settlement, arguing that the exhibit does not explicitly state that it was confidential or submitted under Rule 408. She asserts it is relevant to the motion to dismiss because she is using it as an example to show why she wanted to retain counsel before communicating with Gore. Dkt. 45.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 & n.7 (1978)). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Id.* (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The presumption of access is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability

MEMORANDUM DECISION AND ORDER-14

and for the public to have confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016).

Two standards govern motions to seal portions of documents: a "compelling reasons" standard, which applies to documents attached to motions that more than tangentially relate to the merits of the case (such as dispositive motions), and a "good cause" standard, which applies to documents attached to non-dispositive motions. *Kamakana*, 447 F.3d at 1179; *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010). Here, the document at issue was attached to Green's response to Gore's motion to dismiss. Thus, the "compelling reasons" standard applies.

Under the compelling reasons standard, the party seeking to seal "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (internal quotation marks and citations omitted). "'Compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id*. Another compelling reason is when court files may serve "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598–99. However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179–80 (citing *Foltz*, 331 F.3d at 1136). Under this stringent standard, a court may seal records only when it

MEMORANDUM DECISION AND ORDER-15

finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for Auto Safety*, 809 F.3d at 1101. The court must then "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* (citations omitted).

Under Rule 408, offers of settlement are not admissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." F.R.E. 408. Here, Green is not using the draft settlement agreement for any of those purposes. The Court does not find Gore's invocation of Rule 408 sufficient to meet the compelling reasons standard.

Gore also relies on *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980–81 (6th Cir. 2003) to support its argument that sealing the draft settlement offer is appropriate. In *Goodyear Tire*, the Sixth Circuit held that "confidential settlement communications are a tradition in this country" and public policy supports the "need for . . . secrecy in settlement proceedings." Dkt. 42-1, at 3. Here, however, there is a dispute as to the confidential nature of the communications; while Gore may have *believed* the settlement offer was confidential, Green contests this, and Gore does not provide any evidence that Green ever agreed to such confidential communication. Thus, while public policy supports the need for secrecy in settlement proceedings, it does not support unwillingly binding one party to silence when that party did not agree to secrecy in the first place.

However, Gore also relies on *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 3993147, at *7 (N.D. Cal. June 30, 2015), which

is more persuasive. In *Music Grp. Macao*, the plaintiff sought to seal contracts between the plaintiff and a third-party client on the grounds that the contract included trade secrets. While the plaintiff offered "only general averments" that the contract includes trade secrets of a third party, the court still held that compelling standards had been met. It reasoned that "the content of the contracts are not at issue in this litigation: neither the identity of the third party nor the pricing terms contained therein are even tangentially relevant." *Music Grp. Macao*, No. 14-CV-03078-JSC, 2015 WL 3993147, at *7. The *Music Grp. Macao* court held that because it "did not rely on the content of the contracts," the public's interest in disclosure of the contract agreements was minimal and the documents sealable. *Id*.

      Here, Exhibit 1 has nothing to do with the merits of Gore's motion to dismiss. Green references Exhibit 1 in her response to the motion to dismiss in the following way: "Plaintiff was hesitant to contact Defendant's [sic] attorney for a phone conference (Meet and Confer) due to Defendant's previous conduct to screw Plaintiff into signing documents to dismiss her case and to silence Plaintiff. See Exhibit 1 attached." Dkt. 41, at 2. Gore's proposed terms and conditions of a settlement agreement have nothing to do with the sufficiency of Green's Complaint. Thus, while the motion itself is substantive, the contents of the attached exhibit are not relevant—or even tangentially related to—the motion to dismiss. Because the Court did not rely on the contents of the proposed settlement offer, the public's interest in disclosure of the draft agreement is minimal. On the other hand, public policy supports encouraging the compromise and settlement of existing disputes by keeping such discussions away from the public eye. *See United States v. Contra Costa Cnty. Water Dist.,* 678 F.2d 90, 92 (9th Cir. 1982) ("By preventing settlement negotiations

from being admitted as evidence, full and open disclosure is encouraged, thereby furthering the policy toward settlement."). Thus, the Court will seal Exhibit 1.

The Court GRANTS Gore's motion to seal Exhibit 1. As the Clerk of the Court docketed a scanned version of Exhibit 1 and Exhibit 2 as a single document, the Clerk of the Court is ordered to seal the combined document in its entirety. The Clerk of the Court is instructed to separately docket an unsealed version of Exhibit 2.

## VI. ORDER

IT IS HEREBY ORDERED THAT:

1. Gore's Second Motion to Dismiss (Dkt. 35) is GRANTED and Green's First Amended Complaint (Dkt. 32) is DISMISSED WITHOUT PREJUDICE. Green may file an amended complaint within thirty (30) days of the date of this order to include her now-dismissed claims. Failure to file an amended complaint within the allotted time may result in dismissal of this case.

2. Green's Motion for Extension of Time to File Objection to Defendant's Motion to Dismiss (Dkt. 40) is DENIED as MOOT.

3. Gore's Motion to Seal Exhibit 1 to Plaintiff's Objection to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 42) is GRANTED.

DATED: September 23, 2020

David C. Nye
Chief U.S. District Court Judge